[NOTE. For a history of the subsequent proceedings in this case, see Case No. 2,762, and note.]

## Case No. 2,762.
### The CITY OF NORWICH.
[6 Ben. 330.][1]

District Court, E. D. New York. Jan., 1873.

LIMITING LIABILITY OF SHIP OWNERS—COLLISION—PRACTICE.

1. A collision occurred between a steamboat and a schooner, by which both vessels were sunk. The steamboat was raised by her owners and repaired, after which various suits were brought against her in this court in admiralty, to recover damages for such collision. Those suits were consolidated, and, by order of the court, one stipulation for the value of the steamboat was given in all. Subsequently her owners filed this petition, for the purpose of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

obtaining the benefit of the act of March 3, 1851 (9 Stat. 635), limiting the liability of ship owners, praying an appraisement of the value of the petitioners' interest in the steamboat and her freight, for that purpose. Objection was made on behalf of the parties who had claims against her: *Held*, that it was not necessary to the jurisdiction of the court over this matter, that the court should have possession of the vessel or her proceeds, or of a fund representing the proceeds, over which the court had already obtained control, through the exercise of its ordinary jurisdiction.

2. The pendency of the suits against the vessel, and the existence of the stipulation for value given in those suits, afforded no reason why this proceeding should not be taken, and that the petitioners were entitled to the order directing the appraisement as prayed for.

[Cited in Thomassen v. Whitwell, Case No. 13,930; Re Norwich & N. Y. Transp. Co., Id. 10,362.]

3. A proceeding, to obtain the benefit of the act in question, is not an action in rem, but is a proceeding sui generis, which partakes rather of the character of a suit in personam.

[See note at end of case.]

[In admiralty. Libel by George Place and Charles Place against the steamboat City of Norwich to recover damages for loss of cargo by reason of a collision between the libelled vessel and the schooner General Van Vliet, April 18, 1866. The Norwich & New York Transportation Company, owner of the steamboat, filed an answer and petition to have the benefit of the act of 1851 for a limitation of its liability. The court denied the prayer of the petition, but a stipulation was entered into, between the libellants and other shippers and the claimant, whereby the vessel was bonded for her full value, the stipulation to be for the benefit of all parties who might come in to recover damages for the same disaster. See Place v. The City of Norwich, Case No. 11,202. The vessel was discharged under the stipulation, and the cases of all the parties who came in were heard together, a decree was entered for the respective libellants, and a reference ordered to ascertain and report the amount of the damages. See Id. 2,760. Exceptions were taken to the report of the master, which were overruled. See Id. 2,761.

[On March 4, 1872, the supreme court rendered a decision in the case of Norwich & N. Y. Transp. Co. v. Wright, 13 Wall. (80 U. S.) 104, on an appeal from the circuit court for the district of Connecticut. See Wright v. Norwich & N. Y. Transp. Co., Case No. 18,087, affirming same case in the district court, Id. 18,086. In that case the claimant of the steamboat had filed a petition setting forth the filing of the libel in the eastern district of New York, and praying for relief under the limited liability act of 1851. The district court denied the relief, and on appeal the decree of the district court was affirmed. The claimant then appealed to the supreme court, which, in the opinion before referred to, held that the limited liability act of 1851 adopted the general maritime law in reference to limited liability, as

contradistinguished from the English law measuring the liability by the value of the ship and freight after, instead of before, the collision; that the act embraced cases of damage received by collision, as well as cases of injury to the cargo of the offending ship; that the district courts, as courts of admiralty, have jurisdiction to administer the law; and that the proper court to hear and determine the question is the court which has possession of the fund, i. e. the ship and freight, or the proceeds and value thereof.

[By leave of the court, and in view of the decision of the supreme court before referred to, the Norwich & New York Transportation Company commenced the present proceeding.]

J. W. C. Leveridge, for petitioners.

Martin & Smith and H. C. Place, in opposition.

BENEDICT, District Judge. This is a cause of limitation of liability promoted by the owners of the City of Norwich to exempt them from liability for the loss and damage resulting from a collision between that steamboat and the schooner General Van Vliet, which occurred in the Sound on the 18th of April, 1866.

The cause has been commenced by a petition which prays, among other things, that this court would direct an appraisement of the value of the interest of the petitioners in the said steamboat and her freight pending, to the end that a sum of money equal to the said value be paid into court by the petitioners, or secured to be so paid by them, and they declared exempt from further liability, and that a monition issue against all persons claiming damages from any loss occasioned by said collision, citing them to appear before this court and make due proof of their respective claims. Upon the presentation of this petition, notice of a time when the application for the order prayed would be made, was directed to be given by publication, at which time many persons, having demands arising out of said collision, appeared, but only for the purpose of calling the attention of the court to certain aspects of the case, as it stands.

In behalf of these parties, the first proposition urged upon me is, that the jurisdiction of a court of admiralty over a cause of limitation of liability is dependent upon a prior possession of the vessel's proceeds, or a fund representing such proceeds over which the admiralty court has already obtained control through the exercise of its ordinary jurisdiction. This is claimed to have been decided by the supreme court in the case of Wright v. Norwich & N. Y. Transp. Co., 13 Wall. [80 U. S.] 104.

I do not so understand that decision, and the law must be otherwise. As I read the opinion of the supreme court in the case referred to, the jurisdiction of the admiralty over a cause of limitation of liability is there maintained, upon the ground that the subject-matter of such a cause makes it a cause of admiralty and maritime jurisdiction within the meaning of the constitution. It is the nature of the relief to the owner of a ship which determines the jurisdiction. The supreme court declares that a court of admiralty is better adapted to administer that relief than any other. "The district courts, as courts of admiralty and maritime jurisdiction, have jurisdiction of the matter." The matter involved is the ascertaining of the extent of the liability of the owner of a ship, by reason of some occurrence in the course of the employment of the ship, and, unless that liability is proved to have been terminated by the total destruction of the ship without freight earned, apportioning among the creditors entitled thereto a sum equal to that liability, to which fund alone when paid into the registry the creditors can resort, and upon the payment of which or the surrender of his interest in his ship and her freight, the ship owner is entitled to be decreed exempt from all liability, in pursuance of the act of 1851. The nature of the relief being sufficient to bring the cause within the jurisdiction of the admiralty, it is not necessary that there should be prior suits in the admiralty to recover such demands, nor a prior possession of the vessel or of any fund by the admiralty court under the ordinary process in rem of the admiralty, or otherwise.

In England this jurisdiction is exercised by the court of chancery, and it there attaches upon the mere existence of claims against the owner of a ship, against which he is entitled to relief under the limited liability acts. The English admiralty also has jurisdiction, but only by virtue of a statute which confers the jurisdiction when "the ship or her proceeds are under the arrest of the admiralty." An actual possession of the ship or her proceeds, or "a state of things amounting to an equivalent for the arrest of the vessel," is, therefore, necessary to enable the English admiralty to entertain a cause of limitation of liability. But we have no such statute in the United States, and the jurisdiction of the American admiralty over such a cause is held by the supreme court to be conferred by the act which, in creating the district courts, gave them cognizance of all causes of admiralty and maritime jurisdiction. The power so acquired, to be effectual, must be as ample as that exercised by the English chancery in similar cases, and so the supreme court appear to intend.

It may well be, and indeed must be, in order to proceed to the final accomplishment of the result aimed at by the act of 1851 that, in cases where there is any subsisting liability on the part of the ship owner by reason of an interest in a ship in existence, the court must have the possession of the fund representing the value of that inter-

est, upon the surrender of which the act of 1851 transfers thereto all the rights of the creditors; but the jurisdiction of the court cannot be dependent upon the possession of such a fund, otherwise it would follow that, when the ship is wholly lost and no freight earned, and consequently no fund to distribute, notwithstanding the act exempts the ship owner in such a case, no court of admiralty could give effect to the act; and, as the supreme court has decided the state courts and the national courts of law and equity to be without jurisdiction, the precise result would follow which the supreme court has sought to avoid—namely, a failure of the act for want of a court to give it effect.

It may not be amiss, in this connection, to notice that the relief given by the act of 1851 may be sought under a variety of circumstances. There may be a ship left by the disaster in existence, which her owner has ready to be surrendered, free from all liens or demands other than those against which the act gives relief. She may be in his possession ready to be surrendered, but encumbered with liens, arising prior to the accident against the result of which the ship owner asks to be protected. She may be in existence, but in the custody of a state court under an attachment against the property of the owner, on one of the demands against which he is entitled to be relieved by her surrender. She may be in existence, but at the bottom of the sea, whence she cannot be raised except by an expenditure equal to her value, or at the bottom of a river whence she could be raised by a small expenditure, but one larger than her owner can make. Her freight may be in the hands of the ship owner ready to be surrendered, but it may also be in the hands of an irresponsible master; it may be still due from the freighter, and the right to it disputed by him in some other tribunal, or it may be in some foreign land. It will often occur, therefore, that there is no vessel in custody which will afford foundation for a proceeding in rem, and no fund to be paid into the registry of the court; and yet the act of 1851 intends that in all cases the ship owner shall obtain the relief afforded by the act, when the value of his property put at the hazard of the voyage, proves insufficient to discharge the liability arising out of the voyage. While, then, in most cases, doubtless, the possession of a fund for distribution will give to the cause of limited liability the aspect of a proceeding in rem, it is not such a proceeding, but rather partakes of the character of an action in personam. It is a proceeding sui generis, quite analogous, in respect to the maritime adventure involved, and the liability which arises therein, to a proceeding in bankruptcy—a proceeding limited, of course, to the maritime capital involved, and resulting in a discharge of the owner from certain classes of demands to which he has become liable in the use of that capital. It is taken in the admiralty by reason of the subject-matter, and is there to be conducted as the necessities of such a cause may require, in order to accomplish the result intended by the act of 1851.

But, if the presence of a fund within the control of the court of admiralty were necessary to give that court jurisdiction of a cause of limitation of liability, it is going far to say that it is also necessary that the court should have acquired the prior possession of the fund by virtue of its ordinary admiralty process. Even in England, where an arrest of the ship is by statute made necessary to give jurisdiction to the admiralty, it has been held that "a state of things amounting to an equivalent for the arrest of the ship," is sufficient to support the jurisdiction; and the deposit by the ship owner of a sum equal to the extent of his liability has been considered such an equivalent. James v. London & S. W. R. Co., 26 Law T. 195; The Northumbria, 21 Law T. 683. Certainly then, in this country, where there is no such restriction as in England, the deposit of such a fund in the court of admiralty will support the jurisdiction of that court to administer it. In this case there is such a fund tendered by the petitioner, and ready to be paid into court when so directed.

Nor does the proposition that the possession of a vessel or her proceeds is necessary to give jurisdiction of a cause of limitation of liability derive any support from the admiralty rules of 1872. On the contrary, rule 57 provides for the conduct of such a cause when the vessel has never been libelled, nor any suit brought in any court of admiralty, but only a suit against the owner in a court of law.

But it is further urged, that these petitioners are already in court, because their vessel has been libelled in this court, in an ordinary proceeding in rem, which is still pending. There is pending in this court a proceeding in rem brought against the steamboat City of Norwich by some of the creditors, against whom the petitioners are asking now to be protected; but that proceeding is no obstacle in the way of this proceeding. The only effect of the suit in rem is to fix this district as the one in which the cause of limitation of liability is to be taken by virtue of rule 58. The act of 1851, does not take away the right to institute a proceeding in rem, nor does it in any way interfere with the discharge of a vessel on bail in such suit, but it does permit the ship's owner thereafter to institute his cause of limitation of liability, and, upon complying with the statute, thereby to obtain a stay of all proceedings in the suit in rem, and thus in effect be released from any stipulation given in that suit. It is doubtless true, that if this vessel was still in custody, in the suit in rem pending against her, a transfer of her to a trustee appointed by this court, in pursuance of the act of 1851,

would secure a transfer of the possession from that of the marshal to that of the trustee; and it is no less true, that if a sum of money, representing the proceeds of a sale of this vessel in the suit in rem, was in the registry of the court, that fund, or so much thereof as should be necessary, could be transferred to the credit of this cause to save trouble and expense; and the probability that some such action would often be found convenient or necessary to prevent injustice, may have been one of the reasons for causing the pendency of a suit in rem to determine the district in which the cause of limitation of liability is to be taken; but the two causes should not be considered as connected or in any sense dependent one upon the other. I think it would prove detrimental to all interests, if any effect be given to the act of 1851, calculated to impair either the right of a lien creditor to seize the vessel by a proceeding in rem taken in time, or the right of the owner to obtain the discharge of his vessel from such seizure, by giving the ordinary stipulation for value, with a knowledge that by proper proceedings taken in a cause of limitation of liability, he can be relieved therefrom, when it shall appear that he is exempt from liability, either because the disaster which caused the loss resulted in the total destruction of his vessel without freight earned, or because he has in such cause surrendered all his interest in the ship and freight, and thereby transferred to such fund, all liability for the demand, to secure which until such time his stipulation for value was given. So, as I conceive, the supreme court have intended to be understood. It cannot well be supposed, that it has been intended to decide that the value of this steamboat, when seized in the suit in rem after she had been raised and repaired, is the limit of the liability of her owners, by reason of a disaster which occurred some time before. No such question appears to have been involved in the case before the court.

These remarks dispose also of the further objection made, that the petitioners do not afford the court of admiralty, any case for the exercise of its jurisdiction, because they do not offer to bring in their vessel, nor pay into the registry the sum, at which her value was fixed in the suit in rem, nor do they admit that the stipulation for value given in the suit in rem may be subjected to the claims of those who are to be cited to appear in this cause. There is no fund in this court, in the suit in rem, nor any stipulation there, such as is to be given in this cause, nor any necessity for any resort to the stipulation that was there given, to create a fund which might be transferable to this cause, nor was the value of the petitioners' interest in the vessel and her freight ever ascertained in that suit. An application was made to have that value ascertained in that suit, and to be permitted therein to give a stipulation for the amount of the owners' liability, and to pay

in the freight; but the application was denied, on the ground that the proceeding to obtain relief under the act of 1851 was a separate proceeding, and could not be taken as a part of the proceeding in rem. The stipulation which was afterwards taken in that suit does not purport to represent the amounts of the owners' liability, under the act of 1851, and was not taken with any reference to the provisions of that act. The action of this court, in denying the application made in the suit in rem—see 1 Ben. 89 [Place v. The City of Norwich, Case No. 11,202]—seems to be confirmed by the decision of the supreme court in the Case of Wright, and accordingly this cause is now instituted. It is the first institution of such a cause by these petitioners, and it is to be conducted as a cause by itself, in which the petitioners, if they succeed, may obtain a decree exempting them from liability, and restraining any further action in the suit in rem, pending in this court, as well as in the other actions pending against them elsewhere.

I am unable, therefore, to see why, as this cause now stands, the petitioners are not entitled to an order directing an appraisement of the value of their interest in the City of Norwich, and her freight, pending the proceedings, and it is accordingly referred to a commissioner of this court to hold such appraisement, and report to this court the said value and amount. Notice of the time and place of such appraisement will, of course, be given to any parties who may duly enter their appearance in this cause.

[NOTE. On the coming in of the commissioner's report, exceptions were taken thereto, which were overruled, and the court made a decree authorizing the payment of the appraised value of the steamer into court, and appointed a commissioner to take proof of claims, etc. On a subsequent report of the commissioner, a final decree was entered (January, 1879), distributing the fund in court and discharging the petitioners from further demands. Case unreported.

[The case was then appealed to the circuit court, which affirmed the decree of the district court (October, 1879; decree entered July 3, 1882, case unreported), and from this decree the claimant of the schooner, and Place and others of the libellants, appealed to the supreme court.

[The decree of the circuit court was affirmed by the supreme court, the grounds of which affirmance are set forth in the syllabus to the case, by Mr. Justice Bradley, reported in 118 U. S., at pages 468, 526, 6 Sup. Ct. 1150, under the title of The City of Norwich. So much of the grounds of affirmance as bear upon the specific questions involved in the case are here given:

[The owner of the City of Hartford was entitled to a limitation of liability to the value of its interest in ship and freight, under the act of 1851. Rev. St. §§ 4282–4287.

[The point of time at which the amount or value of the owner's interest in ship and freight is to be taken for fixing its liability is the termination of the voyage on which the loss or damage occurs.

[In the present case, the voyage was terminated when the ship had sunk, and her value at that time was the limit of the owner's liability; and the subsequent raising of the wreck and repair of the ship, giving her an increased

·value, had nothing to do with the liability of the owner.

[No freight except what is earned is to be estimated in fixing the amount of the owner's liability.

[Insurance is no part of the owner's interest in the ship or freight, within the meaning of the law, and does not enter into the amount for which the owner is held liable.

[The limitation of liability is applicable to proceedings in rem against the ship, as well as to proceedings in personam against the owner; the limitation extends to the owner's property as well as to his person.

[The right to proceed for a limitation of liability is not lost or waived by a surrender of the ship to underwriters.

[The district court had jurisdiction to receive the new petition and to proceed thereunder.]